consolidated with the United States v. Delgado-Flores. Mr. Crooks. So how many arguments does this make, Mr. Crooks? Crooks. Too many to count, Judge, but all of them a pleasure. May it please the Court, I'm Tim Crooks. I represent the appellant Juan Carlos Ramos-Delgado. Today, I will be arguing the causation issue on behalf of both appellants and then the harmless error issue on behalf of Mr. Ramos-Delgado. Then Mr. Delbario will address the harmless error issue for Mr. Salgado-Flores and any other questions the Court may have. At issue in these cases is the interpretation of Guideline Section 2L1.1B7, which imposes a 10-level enhancement in an alien transporting case if any person died. And the first question is what, if any, causal nexus the government must prove between the defendant's conduct or relevant conduct and the death of the decedent. As I understand the letter that the government filed last Friday, the government now concedes that in light of the Supreme Court's recent decision in Barrage v. United States, 2L1.1B7D requires actual causation. Well, you understand, I don't know whether concedes is the right word. They take that position, but it's still up to us to determine whether that's the right thing to say. Absolutely, Judge. A government concession never binds this Court. But we believe that that is the correct decision, and we further believe that under the reasoning of Barrage, the particular standard of actual causation that should apply here is but for causation, which, as Justice Scalia explained in his opinion for the Court in Barrage, is the presumptive meaning of phrases like results from and causes. Consequently, the government in this case had the burden of proving that the defendant's conduct was the but-for cause of Mr. Carcamo-Bautista's death. By a preponderance of the evidence. Is that right? By a preponderance of the evidence. That's correct. And we submit that the government failed to carry this burden because the record does not contain any evidence respecting Mr. Carcamo-Bautista's cause of death, let alone that the ---- But there can be an inference, can there not, from all the evidence? There can be an inference from evidence, but there was no evidence here. It would simply be speculation to say that ---- Well, I mean, there's no evidence up until he left the country. Well, the evidence up until he left the country was that he was still alive, albeit in a coma, and he was apparently considered stable enough to be moved to Honduras. Then we have an evidentiary gap from August when he was moved to Honduras to we don't even actually know the date of death. I think the government said that they found out about it on January 7th. But there's just an enormous gap that we have no information about. And this Court has said over and over again that speculation, guesswork, and assumptions are not a proper basis for sentencing. What about the evidentiary presumption that we all learned in 1L, that a condition that's proven is presumed to continue unless proven otherwise? Well, the condition that would be presumed to be continued would be a coma, but he would still be living. And so I think you just can't get around the fact that in this case there's an evidentiary gap where he was living when he left the country for Honduras, and then we know absolutely nothing more about what happened to him until the government gets this email from the Honduran consulate that he had passed away with no indication about what the cause of death was. Does this all become academic in light of the judges sanitizing her sons by saying she would have done it anyway? We contend it does not, Judge, for this reason or for a couple of reasons. First off, the difference between the guidelines with and without the enhancement was pretty stark. You had 78 to 97 with the enhancement, and the judge imposed the 97-month sentence. Without the enhancement, it would have been 51 to 63. Now the judge did say that even if she were wrong about the applicability of the 10-level enhancement, her sentence would not change. And she mentioned in passing 18 U.S.C. section 3553, but I think there are two reasons why that alternative sentence doesn't render the guideline application error harmless. The first is that the district court did not adequately explain the 97-month sentence as a non-guideline sentence, because it was a rather large departure or variance upward from the 51 to 63 range. In fact, the district court did nothing more by way of explanation of the sentence than simply refer in a very general way to the 3553A factors, which the case law has generally held to be inadequate. And we would point in that regard to this Court's decision in Nunez-Granados, which involved this very same district court. And just like here, there was a guideline application error, but the district court also said that if she was wrong about the error, her sentence would not change. Pretty much the exact statement, because I went back and looked at the transcript of that sentencing, and this Court found, one, that there was a guideline error, and second, that the district court's failure to give adequate reasons for the sentence as a non-guideline sentence meant that the error in the application of the guidelines was not harmless. So I think Nunez-Granados is very much on point. It is an unpublished decision, but we believe it's very persuasive. The second reason we think the error is not harmless is that to the extent the district court did give a reason for the 97-month sentence, it appears that it was based on the district court's assumption that Mr. Ramos-Delgado did cause the decedent's death, notwithstanding the lack of proof on that point. And an unproven assumption can never be a proper basis for a sentence, let alone an upward departure or variance of this magnitude. And for those reasons, we submit that there was a guideline application error, and the attempt at an alternative sentence did not render it harmless. So we do ask that this Court vacate Mr. Ramos-Delgado's sentence and remand for a different district judge. Well, that's a pretty steep standard. We do that very rarely and only in situations where there's something bordering on misconduct or total inattention to the case. I just don't see how you can get close to that here. You need to explain that a little bit more if you're really serious. I mean, that's a pretty weighty request on your part, so go into that a little bit. I agree, Judge. It's a very rarely invoked remedy, but I think it is justified in this case. And first off, I would point the Court to the standard that it set out in United States v. Winners, where the Court said reassignment may be appropriate if, quote, the original judge would be reasonably expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected. And there was not actually a reassignment in Winners, but that's a statement of the standard. Then we also cited to the Court United States v. Tobias from the former Fifth Circuit, where this Court actually did order reassignment. And the error in that case was that the district judge had sentenced on the basis of an erroneous assumption that Mr. Tobias was responsible for putting a certain amount of drugs out on the street. And the Court, after finding that to be erroneous and after finding that resentencing was warranted, determined that because that had figured so prominently in the district court's statements during sentencing and in the district court's selection of its sentence, that it was appropriate to order that the case be resentenced by a different judge. So do you really think that Judge Marmoleo would have difficulty in following any sort of guidance or directive that we would give if we decided to remand for resentencing? I don't think that she would intentionally be biased, but I think that this record reflects that she had very strong views about Mr. Ramos Delgado's responsibility for the death. And I think to a certain extent that those views may have overridden the real lack of evidence in this case. Well, you mentioned this Court had done one of those sanitizing. Is that part of your reason that does this judge routinely do that, just rubber stamp? She does. And for those reasons, we would ask for resentencing before a different judge. Let me just quickly, this is on the Court's time, just a quick question I was going to ask. And it seems to me that this is not an uncommon occurrence with the smuggling of the illegal aliens, that there would be a death or injury that might result in some cases. My question is, in your view, do we need a published opinion in this circuit that specifies exactly what the test is, whether it's reasonable foreseeability or but-for or whatever it might be? Would that be helpful? I think it would be helpful, Judge, for this reason, that this issue has been pending at least since the Garcia-Guerrero case back in 2002, and the Court pre-dermitted it then. So it's been pending and unanswered for at least 10 years. And so I think it would be helpful, especially now on the heels of the Barrage decision, to sort of set out a standard for the courts to apply. All right. Thank you. You saved time for rebuttal. Thank you. Mr. Del Barrio. May it please the Court. Good morning, Justice. Unlike Mr. Crooks, it's my first time here. We're glad to have you here. Basically, as the Court is aware, the cases were consolidated basically for the same occurrence. My client also, we feel that Mr. Wilson Salgado-Flores was, that the sentencing was not a harmless error. Basically, piggybacking on what Mr. Crooks has just advised the Court, my client, I did represent Mr. Salgado-Flores throughout the process. And we feel that it was the sufficiency of the evidence with regards to the actual death, and this is not to disparage or, you know, I guess set aside the fact that this person, in fact, did die, or at least we were told that he passed away. This, we were advised of the death minutes before one of the sentencings, which myself and co-counsel, or the co-defendant's counsel at the time, requested more time based on the fact that we were just told that they received a call or an e-mail saying that Mr. — that the victim in this matter had passed away, Your Honor. So, with regards to the harmless error, we feel that the government has not met that burden based on the fact that there was nothing to substantiate other than the seriousness of the injuries, but the injuries, I believe, as of August of 2012, I believe Mr. Garzomo was transported to Honduras, and I believe when we found out it was in January, right, the day of — actually, the day of sentencing was when we found out that he had allegedly passed away. So, it is our argument, our stance, that there was no sufficient evidence, there was not enough to state anything. I mean, there was no death certificate, there was just nothing. We requested stuff from, I believe, the probation who was in charge of providing some information, and nothing other than a simple e-mail. We requested a phone number or something. And just for the simple fact that, you know, there was a four-level adjustment. With regards to my client, my client's original guidelines, according to the court, had been 46 to 57. My client, at the end of the day, was sentenced to 70 months. Although it was not as significant as his co-defendant, Mr. Crook's client, defendant, he was still, I believe, the error was harmless. I mean, it was not a harmless error with regards to his because he could have simply, you know, a year to Mr. Salgado-Flores, who I believe is 25 years old or was 25 years old at the time, is harmful. And we are asking that he should be, it should be remanded and resentenced because of that. Again, I was present at the sentencing. I mean, I believe, although the judge did take into account the, just the six-level bump and really, at the end of the day, really didn't because basically during the sentencing basically just told the clients, because of you, this man is dead. So to jump on what Mr. Crook said about possibly asking for another judge at sentencing, basically the reason we asked for that is, and I'm in front of Judge Marmolejo who I see all the time, was just the fact that basically, as is in Tobias v. United States, stated that, you know, any improper assumptions or whatnot and believe that the judge at this point in time truly believed that our clients did cause the death of this man, and because of that, sentenced him the way that he did, that she did, and because of that, we are asking for the remand and resentence. All right. Thank you, Mr. Tabari. Thank you. Mr. Crum. You're from the Office of the Solicitor General, is that right? That is correct, Your Honor. Good morning, and may it please the Court. Travis Crum representing the United States. The district court properly found by preponderance of the evidence the defendant's conduct in this case caused Mr. Cucamonga-Batista's death. Now, at the outset, the government would like to explain its Rule 28J letter a little bit more and explain how it believes that the Supreme Court's recent decision in Barrage has clarified the role of actual causation in criminal law. You need to slow down just a little bit so the audio is a little bit clearer, if you don't mind. Sure, Your Honor. I apologize. In Barrage, the Supreme Court held that the ordinary meaning of the term results in implies an actual causation requirement. An actual causation in the criminal law has often been viewed as a cause-in-fact inquiry or as it's oftentimes formulated as a question of whether or not the harm would have resulted but for the defendant's conduct. And as the government began to explain in its Rule 28J letter, and as I'd like to elaborate a little bit more here today, the reason why Barrage is important is because of the relevant conduct provisions of the guidelines, and those provisions use the term results from. So if you look at Section 1B1.3a1, a defendant's relevant conduct includes all acts and omissions committed during the offense. And under Section 1B1.3a1b, a defendant is also liable for all reasonably foreseeable acts committed by a co-conspirator in furtherance of a jointly undertaken criminal activity. And those two provisions cover Mr. Ramos Delgado and Mr. Delgado Flores' conduct respectively. So here is where Barrage comes in. If you look at Section 1B1.3a3, that provision defines relevant conduct to include, quote, all harm that resulted from the acts and omissions specified in subsection a1, unquote. So in other words, the defendant's conduct must be a cause-in-fact of the harm for that harmed account as relevant conduct under the guidelines. Or as applied here, the defendant's conduct during the accident must have caused Mr. Krukama Batista's death in order for Section 201.1b7d to apply. So while we agree with defense counsel as to the proper legal standard, I just want to say that we disagree a little bit with what Mr. Kruk said. It's not that Section 201.1b7d contains a causation requirement. It's that the relevant conduct provisions contain the causation requirement. And that once the defendant — once that harm is found to be relevant conduct, you can take that into account through 201.1b7d and giving the ten-point enhancement for the death there. So — There must have shown — must show that the death resulted from the defendant's actions? Yes. We believe that the government must prove by preponderance of the evidence that the — By preponderance of the evidence. Correct. Correct. It's still the preponderance of the evidence standard. And before this Court, that finding is reviewed for clear error, which, as this Court has stated on multiple occasions, means that so long as that finding is plausible in light of the record as a whole, that finding should be affirmed. Now that both sides agree on the relevant legal standard here, I think the meat of this case is actually with regards to whether or not the district court properly found that the defendant's conduct resulted in the death of Ms. Gorkama Batista. And on this Court, I think the record — it's eminently plausible that the defendant's conduct resulted in the death. So here you have a situation where Mr. Ramos Delgado was driving a pickup truck through rural Texas early in the morning with several unsecured, undocumented immigrants in the back of the pickup truck. Upon seeing Border Patrol authorities, he panicked and decided to flee. He twice drove over an interstate median. He then went off-road, through a ditch, through a fence, and eventually crashed into a tree. Mr. Gorkama Batista was a passenger in the back of the pickup truck, and he sustained massive facial trauma as a result of the accident. When he was found at the scene, he was unresponsive. When he arrived at the hospital, he was unresponsive. While at the hospital, he coded for approximately 15 minutes, which means that his heart stopped and his brain was deprived of oxygen during that time. Although he was eventually saved by the doctors at the hospital, he was in a coma. And the doctors predicted that because of the lengthy period of time in which his brain was deprived of oxygen, he would no longer — he would remain in a permanent vegetative state until his death. Now, Mr. Gorkama Batista stayed in the American hospital for approximately four and a half months before he was transported on August 30th back to his native Honduras to die with his family. Upon his departure from the hospital, medical professionals believed that his prognosis was poor. So given that factual background — in fact, the United States government received an email from the Honduran consulate representing that Mr. Gorkama Batista died — I think it's plausible that the district court's factual finding was correct. Was there anything presented to contradict that his death was from some other cause other than this accident? No, Your Honor. In fact, the theories put forward by the defense counsel in this case are surely just speculation. Their brief mentions things like meteor strikes and other fantastical events, whereas here the district court's findings are reasonable inferences from circumstantial evidence. And this is not a situation where a victim in a case could have woken up, recovered, walked out of the hospital, and been hit by a bus. If something that amazing had happened, you would think that the Honduran consulate would have mentioned it in the email to the court explaining that Mr. Gorkama Batista died. What about the temporal connection? I gathered from counsel for Defendant Flores, Delgado Flores, that they only heard about his death a day or so before the sentencing. Did I misunderstand that? I'm glad you asked that question, Judge Rehner. I wanted to correct the record on that. So the original sentencing proceeding was scheduled for January of 2013, and the government found out about the death on January 7th of 2013. However, as we detail in the procedural background portion of our brief, the original sentencing before Judge Elrod was actually postponed because of this new information. And if you look at the sentencing transcript that is relevant in the record here, it occurred in late March. So defense counsel had more than two months to repair once they learned of the fact that Mr. Gorkama Batista died. And there was written objections filed by the defense counsel in this case and responses filed by the probation office indicating the reasons why the ten-point enhancement was proper. So I think that was an unfair characterization of the record as to the amount of surprise that happened here. So in that respect, the defense counsel were able to prepare for this case in that regard. You mentioned Judge Elrod. Could you clarify for me what role did she play and what role did Judge Marmolejo play? Sure, Judge Prado. Judge Elrod was supposed to sentence the defendants in the January 2013 sentencing hearing. And when the death of the victim was revealed just immediately prior to that sentencing hearing, defense counsel asked for a continuance. Judge Elrod granted that continuance and the case was reassigned to Judge Marmolejo. And I think one thing that's important to keep in mind here is that although the government's brief in this case initially argued for a broader conception of causation than what we're currently asking for here, before the district court, the district judge understood that this was a question of factual causation. If you look at the transcript as a whole, the district judge asked questions about sort of the matter-of-fact inquiry about whether or not the accident was the cause in fact of the victim's death here. Indeed, if you look at page 4 of the sentencing transcript, and in terms of the sentencing transcript, I'm citing to the Salgado-Flores sentencing transcript that's in the record because that's the complete sentencing transcript. The Ramos-Salgado sentencing transcript omits some of the pages that only deal with Mr. Salgado-Flores. And in that transcript, page 4, the district judge opens up the sentencing hearing by saying that the only thing that's being debated is whether this was the cause of death. And if you look at the entire discussion between defense counsel, the probation officer, and the district judge, it's a matter-of-fact inquiry about whether or not the accident caused the death. And at page 24 of the sentencing transcript, the district court ultimately concludes the court is making a finding as to both individuals that the death of Mr. Korkama was a result of the actions undertaken by these individuals. That is a straightforward but-for finding. Indeed, if we, the government would like to use barrage here and say that the plain meaning of result is a but-for causation requirement, and therefore that any indication of the district court applied the wrong legal standard here I think is incorrect. And finally, because the defense counsel here spent a good deal of time on the harmless error argument, I just want to address that briefly. Here we — without the 10-point enhancement, Salgado Flores would have received a 13-month upward variance in order to achieve the sentence that the district court meted out. And Mr. Ramos Salgado received a 34-month upward variance. And here at page 31 of the sentencing transcript, the district court explained that if for whatever reason the 10-point enhancement didn't apply because a paper death certificate had not been provided by the government, she still would have sentenced the defendants to that — to those sentences because of the death of Mr. Korkama Batista. But in addition to that reason, Your Honors, I think that there are other reasons throughout the sentencing transcript and under the record in this case that would justify an upward variance. For example, there was more than one victim in this case. Mr. Garcia Padilla was also riding the back of the pickup truck being driven by Mr. Ramos Salgado, and he suffered a spinal fracture during the accident. He was hospitalized for five days. He underwent back surgery. Although he can walk and stand now, he must do so with a back brace, and he cannot find manual labor. In addition, during the sentencing hearing, the district judge was disturbed by the behavior of both of the defendants. With regards to Mr. Salgado Flores, the district judge pointed out that there was evidence in the record that Salgado Flores had threatened to kill the undocumented immigrants if they spoke to ICE authorities upon apprehension. And with regards to Mr. Ramos Salgado, the district judge thought that he was insufficiently remorseful with regards to the death of the victim in this case. So given those character determinations and given the other harms that accrued in this case, I think it would be improper. What are there any of the circuits that have adopted the but-for test that you're urging in your latest Rule 28J letter? Your Honor, when this Court issued its decision in U.S. v. Valenzuela Contreras, it mentioned that other circuits had reached that decision in its side of the Ninth Circuit. I can also represent to the Court that the Second Circuit and the Third Circuit have reached the same decision, and we believe that in light of Barrage, the but-for causation requirement is something that is embedded within the relevant conduct provisions. All right. So what you're asking, I just want to make sure, is not any different from the standards that those circuits have enunciated. Correct. With regards to but-for causation, the one thing I'd like to make clear, Your Honor, is that we don't think that this case implicates legal causation or approximate causation. The sort of scope of the risk, reasonable foreseeability aspect of the case, if you look at page 4 of Ramos Salgado's reply brief, they concede that reasonable foreseeability is not a factor here. So this is just a factual question, and I think that's the only thing that the Court needs to reach in order to resolve this case. So does the Department of Justice take a position on whether the Tenth Circuit's reasonable foreseeability test is correct? We think that the Tenth Circuit's test is incorrect, though I think what's incorrect about it is not necessarily the reasonable foreseeability part, but the causal connection part that seems to be a watered-down version of the but-for causation test. That's what I think we would take primary issue with. But we think that in light of Barrage, that decision is incorrect. Okay. If there are no further questions, we ask that the sentences be affirmed. Thank you. Mr. Crump. Mr. Crooks, you save time for a vote. At the outset, I would like to take issue with something that Mr. Crump said, which was that the district court in this case did focus correctly on causation and fact. I don't think that is correct because I think the district court conflated legal cause or proximate cause with factual cause. And I would point the Court to page 24 of the sentencing transcript in Mr. Salgado Flores's case where the Court said this. The Court is making a finding as to both individuals that the death of Mr. Kakamo was the result of the actions undertaken by these individuals, that it was reasonably foreseeable that he died as a result of the actions by these defendants. So I am making that finding. We submit that that was the problem all along with the proceedings below, was that which is part of the inquiry, but it's not the part that we're challenging. There's causation in fact, and there's legal cause, and reasonable foreseeability goes to the legal cause. And the district court conflated those two inquiries. With respect to whether the factual finding at issue here is clearly erroneous, it's well settled that a fact finding is clearly erroneous if it's based on speculation and conjecture. And again, at bottom, all you have is guesswork that Mr. Kakamo died of his injuries. It might not be the most far-fetched guess that the world has ever heard of, but at bottom, it is still just a guess because you have a gap of time from the time that he was injured, from the time he was moved from the United States to Honduras to the time unspecified of his death. And this Court has said over and over again, guesswork, no matter how plausible it is, can't be the basis for a sentence. And again, we cited in our brief United States v. Conner, United States v. Gray, United States v. Leal, and Judge Wiener's opinion for the Court in United States v. Balderas-Gonzalez, where the Court held that a mere possibility was not sufficient to sustain an enhancement, and that was also an alien transporting case, coincidentally. So for all these reasons, we would ask the Court to vacate and remand to a different judge for re-sentencing. Roberts. Thank you. Brooks. Thank you. Your case is under submission. Mr. Del Barrio.